UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JERRY FLANORY,

        Plaintiff,                       Case No. 2:08-cv-108

v.                                         Honorable R. Allan Edgar

ALLEN BONN et al.,

        Defendants.
_____/

## OPINION

Plaintiff Jerry Flanory, an inmate currently confined at the Parnall Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Robert Bonn, Jeffery Woods, Linda Tribley, Alma Potts, Nancy Marshall, Barry Davis, and Jim Armstrong.

Plaintiff complains of events that occurred while he was housed at the Newberry Correctional Facility (NCF). Plaintiff alleges that in December 2004, he was interviewed by Allen Bonn for placement in the General Equivalent Degree (GED) program. Plaintiff informed both Mr. Bonn and Robert Torp, the principal of the GED program, that he had obtained his GED through the Sarvis Educational Center many years before, and that he had since obtained an Associate Degree in General Studies from the Montcalm Community College. Neither Mr. Bonn nor Mr. Torp investigated Plaintiff's educational background, and Plaintiff was assigned to the GED program. Linda Tribley, the Assistant Deputy Warden at NCF, advised Plaintiff that it was his responsibility to provide documentation showing his educational achievements. On January 5, 2005, Plaintiff

signed an Assignment Waiver Form to be removed from the GED program and the school roster. On January 28, 2005, Mr. Bonn placed Plaintiff on room restriction for waiving the GED program. Room restriction disqualified Plaintiff from indigent status. As a result, he was not able to purchase personal hygiene items. In response to Plaintiff's grievance concerning the situation, NCF Warden Barry Davis stated that hygiene items were available in the housing units. Plaintiff requested these items from Alma Potts, Assistant Resident Unit Supervisor, who responded that the items were not available.

In October 2005, Plaintiff met with the new principal, who contacted Montcalm Community College, verified Plaintiff's Associate Degree, and on November 10, 2005, removed Plaintiff from room restriction and added him to the work pool. After securing funds from his job assignment, Plaintiff requested his records from the Sarvis Educational Center, which he received on April 18, 2006, showing that he had earned a GED.

Plaintiff alleges that he had a dental examination in October 2004, which revealed no dental problems. In September 2005, Plaintiff experienced a toothache. After an examination, Plaintiff was diagnosed with periodontal disease of the gums, and one tooth was extracted. Plaintiff alleges that his dental health declined because he was wrongfully placed on room restriction and denied indigent status, and was not otherwise provided with dental hygiene supplies. Plaintiff seeks compensatory and punitive damages.

Plaintiff's complaint was initially dismissed by this court for failure to state a claim on January 5, 2009 (docket #8 and #9). Plaintiff filed an appeal and the Sixth Circuit Court of Appeals reversed and remanded Plaintiff's Eighth Amendment claim against the named Defendants (docket #13, #14, and #15).

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #40). Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

3

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

4

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance

5

to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants assert that Plaintiff failed to properly exhaust his claims against Defendants Tribley, Woods, Torp and Marshall. In support of this assertion, Defendants offer the affidavit of Richard B. Stapleton, the Administrator for the Office of Legal Affairs at the MDOC. Stapleton attests that he is the second line supervisor for the Grievance Section and has overall responsibility for Step III grievance decisions. Stapleton attests that all step III grievance appeals are recorded on the Grievance Tracking database. (Defendants' Exhibit A, ¶¶ 1, 13.)

Stapleton states that he has caused a search of the database for step III grievance appeals filed by Plaintiff, and that Plaintiff has filed five such appeals. Grievance NCF-2005-060415-12z alleges improper denial of medical care for a variety of conditions. Direct Grievance 177311 was received on August 4, 2005, and was returned to Plaintiff unprocessed. Plaintiff was instructed to resubmit the grievance at step I. Grievance NCF-05-01-00011029 alleges that Plaintiff informed the principal that he had already received his GED and associate degree, but that the NCF school refused to accept the information in his presentence investigation report (PSI). Grievance NCF-05-11-00826-02z alleges that Plaintiff was improperly denied indigent status for refusing school despite the fact that he already had his GED and associate degree. Grievance NCF-05-02-00097-01i alleges that Plaintiff was improperly denied hygiene items needed for Plaintiff to maintain a well-groomed appearance, and states that Defendants Bonn and Potts were responsible for refusing the hygiene items. The grievance indicates that Plaintiff attempted to resolve the issue prior to writing the grievance by sending kites to Defendant Bonn and that Plaintiff spoke to Defendant Potts and received a bar of soap and a toothbrush. (Defendants' Exhibit A, ¶¶ 14-19.)

Defendants also offer a copy of the grievance inquiry printout, which supports the contents of Stapleton's affidavit regarding the grievances filed by Plaintiff at step III. (Defendants' Exhibit B.) The court notes that in Grievance NCF-2005-060415-12z, Plaintiff alleged the denial of needed medical care for his Hepatitis C, pain management, orthopedic impairments, degenerative swollen ankles, and treatment for left eye drainage in his step I grievance. (Defendants' Exhibit C.) Plaintiff's Direct Grievance 177311 was rejected and Plaintiff was instructed to attempt to the resolve the issue verbally, and that if he was unable to do so, to file a step I grievance. The court notes that Direct Grievance 177311 does not mention Defendants Marshall, Bonn, Potts, Tribley, Woods, or Torp. (Defendants' Exhibit D.) In Grievance NCF-05-01-00011-029a, Plaintiff complained at step I that Principal Quattrin improperly failed to access information in Plaintiff's presentence investigation showing that Plaintiff already had a GED and an Associate's Degree. Plaintiff failed to name Defendants Marshall, Bonn, Potts, Tribley, Woods, or Torp in the step I grievance. (Defendants' Exhibit E.)

At step I of Grievance NCF-05-11-00826-02z, Plaintiff asserted that Defendants Marshall and Potts denied him indigent status after he was voluntarily removed from the GED program. Plaintiff's step I filing does not mention Defendants Bonn, Tribley, Woods, or Torp. In addition, Plaintiff's step III grievance appeal asserts that the denial of indigent status caused him to be without toothpaste and other necessary hygiene items. The court notes that where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Accordingly, Plaintiff's additional allegations regarding the hardship he suffered as a result of the denial of indigent status could be properly raised at step III. However, raising allegations against a particular defendant for the first time at Step II or III is insufficient to

7

demonstrate exhaustion. *Id.* at 576 n.4. Therefore, Plaintiff did not properly exhaust his claim against Defendant Tribley where he names Tribley for the first time in his step III appeal of the denial of Grievance NCF-05-11-00826-02z.[1] (Defendants' Exhibit F.) Finally, in Grievance NCF-05-02-00097-01i, Plaintiff complained that Defendants Bonn and Potts refused to provide him with necessary hygiene items. However, Plaintiff failed to name Defendants Marshall, Tribley, Woods or Torp. (Defendants' Exhibit G.)

        Defendants Marshall, Tribley, Woods and Torp assert that they are entitled to dismissal for lack of exhaustion. As noted above, Plaintiff filed two grievances complaining of the denial of indigent status and of his inability to obtain toothpaste and other hygiene supplies. (Defendants' Exhibits F and G.) In those grievances, Plaintiff named Defendants Marshall, Potts, and Bonn. Plaintiff claims that Defendants Tribley, Torp, Woods and Marshall became involved after he filed his step I grievance and that because his complaint was "ongoing," he was not required to file a new grievance each time he was denied indigent status and hygiene items by a staff member. However, Plaintiff is incorrect. As noted above, Plaintiff was required to file a step I grievance regarding the alleged misconduct of each individual Defendant. Accordingly, the court finds that Plaintiff exhausted his administrative remedies with regard to Defendants Marshall, Potts, and Bonn. However, because Plaintiff failed to name Defendants Torp, Woods and Tribley in his step I grievances, they are entitled to summary judgment for failure to exhaust administrative remedies.

        Defendants also assert that Plaintiff has failed to allege facts showing that Defendants Bonn, Tribley, Woods and Torp were personally involved in the activity that forms the basis for Plaintiff's complaint. Liability under Section 1983 must be based on more than merely the right to

---

[1] Defendants assert that Plaintiff failed to name Defendant Potts in his step I grievance. Defendants are incorrect. A review of the grievance shows that Plaintiff did name Defendant Potts in the first paragraph of his step I grievance.

control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is

not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

In Plaintiff's response to the motion for summary judgment, he asserts that all of the Defendants were personally involved in the underlying misconduct as stated on pages 9-13 of his complaint. Plaintiff alleges that Defendant Bonn denied Plaintiff personal hygiene items, including toothpaste, for a period of 337 days. Plaintiff alleges that Defendant Torp violated his rights by failing to maintain accurate prison school records and by failing to make a reasonable effort to "find the truth." Defendant Torp aided Defendant Bonn in preventing the verification of Plaintiff's GED credentials in order to maintain a high quota of GED enrollees. In June of 2005, Defendant Torp refused Plaintiff's college transcripts on the grounds that they were fraudulent. Plaintiff claims that this was done maliciously to hurt Plaintiff because of his refusal to enroll in GED programming. Plaintiff states that Defendant Tribley refused to contact the educational facilities listed by Plaintiff or to verify his credentials, knowing that Plaintiff was indigent and would be denied personal items such as toothpaste as a result of waiving GED programming. Therefore, the court concludes that Plaintiff has alleged that Defendants Bonn, Torp and Tribley were personally involved in the underlying misconduct.

Plaintiff alleges that Defendant Deputy Warden Woods signed Plaintiff's waiver form and condoned the actions of his subordinates. As noted above, Defendant Woods cannot be liable for the denial of administrative grievances or the failure to act. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Woods are properly dismissed for lack of personal involvement.

Additionally, the court notes that Plaintiff's claims against Barry D. Davis and Jim Armstrong are based solely on their handling of his grievances. Service has not been completed on these individuals. However, should Davis and Armstrong be served, Plaintiff's claims against them are properly dismissed for lack of personal involvement.

In addition, Defendants state that they are entitled to summary judgment because Plaintiff had access to "tooth swabs," even though he did not have access to toothpaste. However, the Sixth Circuit specifically found that the deprivation of toothpaste for a period of 337 days states a claim under the Eighth Amendment. (Docket #13.) Defendants also offer the affidavit of Richard Cutrer, Property Room Manager at NCF, who attests that Plaintiff's property file contains a standard MDOC "Prisoner Personal Property Receipt" dated May 15, 2006, and signed by Corrections Officer Jeffrey Babcock. This receipt indicates that at the time that Plaintiff was transferred from NCF on May 15, 2006, he possessed 20 tubes of toothpaste. Defendants also offer a copy of the receipt. (Defendants' Exhibit M and M-1.) However, a review of Plaintiff's complaint shows that he is asserting a denial of toothpaste from March of 2005 until January of 2006. Therefore, the fact that Plaintiff had toothpaste in May of 2006 is irrelevant to Plaintiff's claims. In Plaintiff's response to the motion for summary judgment, he reiterates his claim that he did not have toothpaste during the period from March of 2005 until January of 2006. Therefore, Defendants' assertion that they are entitled to summary judgment on the merits is properly denied.

Finally, Defendants state that Plaintiff's claims for emotional injury are barred because he has failed to allege a physical injury. Section § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

However, in its opinion remanding this case, the Sixth Circuit specifically found that Plaintiff showed "an injury in that he was diagnosed with periodontal disease of the gums and had a tooth extracted." (Docket #13, p. 10.) Defendants are asking this court to reverse the decision of the Sixth Circuit based on facts already in the record at the time of the Sixth Circuit's decision. This court does not have the authority to take such an action.

In conclusion, the court notes that Defendants Torp, Woods and Tribley are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with regard to these Defendants. In addition, Defendant Woods is entitled to summary judgment for lack of personal involvement. Finally, the court concludes that Defendants Bonn, Potts and Marshall are not entitled to summary judgment.

An Order with this Opinion will be entered.


Dated:       9/23/2011                    */s/ R. Allan Edgar*
                                          R. Allan Edgar
                                          United States District Judge